**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| GERALD CELANO, *Individually and on Behalf of All Others Similarly Situated,*<br><br>    Plaintiff,<br><br>   v.<br><br>FULCRUM THERAPEUTICS, INC., BRYAN STUART, ROBERT J. GOULD, CHRISTOPHER MORABITO, and JUDITH DUNN,<br><br>    Defendants. | No. 1:23-cv-11125-IT<br><br><br>**ORAL ARGUMENT REQUESTED**<br><br>**(LEAVE TO FILE GRANTED DOC. NO. 34, 10/20/2023)** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'**
**<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

Deborah S. Birnbach
Tucker DeVoe
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.: 617.570.1000
Fax: 617.523.1231
DBirnbach@goodwinlaw.com
TDevoe@goodwinlaw.com

*Counsel for Fulcrum Therapeutics, Inc, Bryan Stuart, Robert J. Gould, Christopher Morabito, and Judith Dunn*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 3

I.    THE AC FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER. ........................ 3

    A.    There Is Not a Single Allegation in the AC Identifying Contemporaneous
    Knowledge or Reckless Disregard by the Individual Defendants. ........................ 3

    B.    The AC's Other Allegations Do Not Support a Strong Inference of
    Scienter. .......................................................................................................... 6

    C.    Plaintiff Fails to Allege Defendants Had a Motive to Commit Fraud. ................ 10

    D.    The Non-Fraudulent Inferences the Court Must Weigh Are Far More
    Cogent and Compelling than Plaintiff's Allegedly Fraudulent Ones. ................. 11

II.   PLAINTIFF HAS NOT ALLEGED ANY MATERIALLY MISLEADING
    STATEMENTS OR OMISSIONS. ................................................................................ 12

III.  THE AC FAILS TO PLEAD LOSS CAUSATION. ...................................................... 14

IV.   THE COURT MAY CONSIDER THE DOCUMENTS ATTACHED TO
    DEFENDANTS' MOTION AT THE PLEADING STAGE. .......................................... 15

CONCLUSION ..................................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re A123 Sys., Inc. Sec. Litig.*,
   930 F. Supp. 2d 278 (D. Mass. 2013) ........................................................................10

*In re Biogen Idec, Inc. Sec. Litig.*,
   2007 WL 9602250 (D. Mass. Oct. 25, 2007)..........................................................2, 5, 6

*In re Biogen Inc. Sec. Litig.*,
   857 F.3d 34 (1st Cir. 2017)............................................................................................7

*Brennan v. Zafgen, Inc.*,
   853 F.3d 606 (1st Cir. 2017)...............................................................................4, 9, 11

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*,
   632 F.3d 751 (1st Cir. 2011).....................................................................................4, 11

*City of Miami Fire Fighters' & Police Officers' Ret. Tr. v. CVS Health Corp.*,
   46 F.4th 22 (1st Cir. 2022).......................................................................................3, 15

*Collier v. ModusLink Glob. Sols., Inc.*,
   9 F. Supp. 3d 61 (D. Mass. 2014) ...............................................................................10

*Corban v. Sarepta Therapeutics, Inc.*,
   868 F.3d 31 (1st Cir. 2017)................................................................................6, 11, 13

*Crowell v. Ionics, Inc.*,
   343 F. Supp. 2d 1 (D. Mass. 2004) ..............................................................................10

*Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*,
   778 F.3d 228 (1st Cir. 2015)...............................................................................7, 11, 15

*Ganem v. InVivo Therapeutics Holdings Corp.*,
   845 F.3d 447 (1st Cir. 2017)...........................................................................................9

*In re Genzyme Corp. Sec. Litig.*,
   754 F.3d 31 (1st Cir. 2014)..........................................................................................11

*Gunther v. EnerNOC, Inc.*,
   2009 WL 10693532 (D. Mass. May 13, 2009)...........................................................8, 9

*Harrington v. Tetraphase Pharms. Inc.*,
   2017 WL 1946305 (D. Mass. May 9, 2017)................................................................13

*Hill v. Gozani*,
   638 F.3d 40 (1st Cir. 2011).................................................................................9

*Hill v. State Street Corp.*,
   2011 WL 3420439 (D. Mass. Aug. 3, 2011) ........................................................8

*In re iRobot Corp. Sec. Litig.*,
   527 F. Supp. 3d 124 (D. Mass. 2021) ...........................................................7, 10

*Leavitt v. Alnylam Pharms., Inc.*,
   525 F. Supp. 3d 259 (D. Mass. 2021) ...........................................................4-5, 8

*Lenartz v. Am. Superconductor Corp.*,
   879 F. Supp. 2d 167 (D. Mass. 2012) ................................................................11

*Leung v. bluebird bio, Inc.*,
   599 F. Supp. 3d 49 (D. Mass. 2022) ...................................................................15

*Loc. No. 8 IBEW Ret. Plan & Tr. v. Vertex Pharms., Inc.*,
   838 F.3d 76 (1st Cir. 2016).................................................................................8

*Luongo v. Desktop Metal, Inc.*,
   2023 WL 6142715 (D. Mass. Sept. 20, 2023) ...........................................4, 10, 13

*Lydon v. Local 103, Int'l Bhd. of Elec. Workers*,
   770 F.3d 48 (1st Cir. 2014).................................................................................15

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011).............................................................................................9

*Metzler Asset Mgmt. GmbH v. Kingsley*,
   928 F.3d 151 (1st Cir. 2019)...........................................................................5, 7

*N.J. Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.*,
   537 F.3d 35 (1st Cir. 2008) ..........................................................................2, 5-6

*Okla. Firefighters Pension & Ret. Sys. v. Biogen Inc.*,
   665 F. Supp. 3d 125 (D. Mass. 2023) ...................................................................7

*In re Philip Morris Int'l Inc. Sec. Litig.*,
   2021 WL 4135059 (S.D.N.Y. Sept. 10, 2021)......................................................13

*In re Psychemedics Corp. Sec. Litig.*,
   2017 WL 5159212 (D. Mass. Nov. 7, 2017) .........................................................10

*Quinones v. Frequency Therapeutics, Inc.*,
   665 F. Supp. 3d 156 (D. Mass. 2023) ...................................................................7

*Rowayton Venture Grp. LLC v. McCarthy*,
   2020 WL 4340985 (D. Mass. July 28, 2020).............................................................................6

*Shash v. Biogen, Inc.*,
   84 F.4th 1 (1st Cir. 2023)........................................................................................................4

*In re Smith & Wesson Sec. Litig.*,
   604 F. Supp. 2d 332 (D. Mass. 2009) ....................................................................................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007).................................................................................................................3

*Thant v. Karyopharm Therapeutics Inc.*,
   43 F.4th 214 (1st Cir. 2022)............................................................................................. 13-14

*In re Transkaryotic Therapies, Inc. Sec. Litig.*,
   319 F. Supp. 2d 152 (D. Mass. 2004) .....................................................................................4

*Urman v. Novelos Therapeutics, Inc.*,
   796 F. Supp. 2d 277 (D. Mass. 2011) .....................................................................................9

*Washtenaw County Employees Retirement System v. Avid Technology, Inc.*,
   28 F. Supp. 3d 93 (D. Mass. 2014) .........................................................................................8

*In re Wayfair, Inc. Sec. Litig.*,
   471 F. Supp. 3d 332 (D. Mass. 2020) ....................................................................................14

*Whitehead v. Inotek Pharms. Corp.*,
   2018 WL 4732774 (D. Mass. June 27, 2018)........................................................................14

*Yan v. ReWalk Robotics Ltd.*,
   973 F.3d 22 (1st Cir. 2020).....................................................................................2, 11, 13, 14

**Statutes**

15 U.S.C. § 78u-4(b)......................................................................................................................3

21 U.S.C. § 356(b) .........................................................................................................................5

## PRELIMINARY STATEMENT

Plaintiff's opposition brief ("Opposition" or "Opp.") confirms that the AC's[1] theory of securities fraud amounts to nothing more than non-actionable hindsight. Nothing in the Opposition overcomes the AC's core failure to plead facts to show the requisite strong inference of scienter that Defendants knew their statements were false or misleading *when made*. The AC pleads that Defendants made every challenged statement in this case *before* FDA provided Defendants with any plausibly negative information regarding FTX-6058 (*i.e.*, in the February 2023 clinical hold). AC ¶ 141. Further, the AC pleads that Defendants provided FDA the allegedly concerning preclinical data "[o]ver the course of 2022," *and after that* FDA granted FTX-6058 Fast Track designation—a regulatory action Plaintiff does not challenge was positive. AC ¶¶ 17, 81. These facts are the opposite of scienter. The Opposition ignores them.

The AC contains *zero* allegations that FDA or anyone else conveyed concerns of any nature to Defendants prior to the clinical hold, which Defendants immediately announced. While the Opposition now states that "Defendants were well aware of FDA's concerns" (Opp., Doc. No. 38 at 14), that "FDA confirmed [the data] was negative" (Opp. at 18), and that Defendants possessed "FDA's actual (but undisclosed) findings" (Opp. at 31), these allegations *do not appear in the AC*, and Plaintiff has no factual basis for them. The pleadings are clear—no one told any Defendant that any of their statements were false or misleading at or prior to the time they were made.

The Opposition also ignores the extensive dispositive case law cited by Defendants explaining that, even if the preclinical animal toxicology studies submitted to FDA raised some concern within the Company (facts not adequately alleged in the AC), that still would not

---

[1] Unless otherwise noted, capitalized terms are defined as in Defendants' Memorandum of Law in Support of their Motion to Dismiss ("Memorandum" or "Mem.").  Doc. No. 37.

sufficiently plead scienter. *Yan v. ReWalk Robotics Ltd.*, 973 F.3d 22, 40 (1st Cir. 2020) ("failure to 'divulge the details of interim regulatory back-and-forth with the FDA' . . . does not generate a strong inference of scienter"); *see* Mem. at 28. Even when life sciences companies receive *warning letters* from FDA (a fact not alleged here), there is no obligation to disclose if "defendants believed they could still meet the FDA's requirements." *Yan*, 973 F.3d at 41. In a conclusion practically on all fours here, the court, in a decision later affirmed by the First Circuit, held that "[t]he fact that the FDA approved 'fast-track' certification of the drug while in the possession of such data [alleged to serve as a basis for scienter] undermines the plaintiffs' reliance on the presence of such adverse events as proof that the drug was unsafe to place on the market." *In re Biogen Idec, Inc. Sec. Litig.*, 2007 WL 9602250, at *13 (D. Mass. Oct. 25, 2007), *aff'd sub nom. N.J. Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.*, 537 F.3d 35 (1st Cir. 2008); *see* Mem. at 20 (citing same). The Opposition does not *cite* these cases, let alone present an argument that they do not compel dismissal. As discussed in the Memorandum and below, the AC's other attempts to bolster a scienter inference through confidential witness ("CW") statements and the like fail because they bear no connection to the Individual Defendants' state of mind or the alleged fraud.

With regard to the alleged misstatements, rather than engage with what Defendants actually said, the Opposition attacks strawmen. The Opposition mischaracterizes the AC's challenged statements. The AC does not allege that Defendants said FTX-6058 "had a favorable safety profile" or "was on track to obtain approval." Opp. at 8. Instead, Defendants accurately described details about specific studies not alleged to be false. The other challenged statements fall well within the bounds of non-actionable opinions, puffery, and immunized forwarding-looking statements[2] under this Circuit's case law. Rather than address these issues, the Opposition reduces

---

[2] Exhibit 1 charts Defendants' arguments as to each alleged misleading statement. Doc. No. 36-1.

the argument on non-actionable opinions to a *footnote* that recites the *Omnicare* standard without explaining how Defendants' statements do not meet that test (Opp. at 22, n.3) and speaks in generalities, citing inapposite or out-of-Circuit cases (Opp. at 21-22). Defendants had a reasonable basis for their optimism for FTX-6058; FDA granted Fast Track designation while possessing the same information Plaintiff claims was omitted, further demonstrating that reasonableness.

As noted in the Memorandum, the AC also fails to plead loss causation. Finally, Plaintiff's "contingent" and empty request for leave to amend in the event of dismissal holds "no legal significance" and need not be considered. *City of Miami Fire Fighters' & Police Officers' Ret. Tr. v. CVS Health Corp.*, 46 F.4th 22, 36 (1st Cir. 2022).

<strong>ARGUMENT</strong>

**I.      THE AC FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER.**

The AC fails to provide any inference of scienter, much less the strong inference necessary to overcome *Tellabs*' and the PSLRA's stringent balancing test. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007) (scienter must be "at least as compelling as any opposing inference of nonfraudulent intent"); 15 U.S.C. § 78u-4(b). The Opposition does not change that. *First*, no allegations suggest Defendants knew or were reckless in not knowing any information that undermined their statements when made. *Second*, Plaintiff's "additional allegations," AC ¶¶ 154-65, do not support an inference of fraudulent or reckless intent. *Third*, the same goes for the AC's motive allegations—they are the run-of-the-mill financial incentives to any corporate executive that courts routinely reject. *Finally*, the non-fraudulent inference is far more cogent and consistent with the facts as alleged in the AC—there is no "draw" here (*see* Opp. at 33).

**A.      There Is Not a Single Allegation in the AC Identifying Contemporaneous Knowledge or Reckless Disregard by the Individual Defendants.**

The Opposition does not resolve the AC's failure to allege that any Individual Defendant

-3-

knew or recklessly ignored information undermining their statements. While the AC alleges the Company did not publicly disclose data from the preclinical animal toxicology studies, that does not answer the scienter question. *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*, 632 F.3d 751, 758 (1st Cir. 2011) ("The key question in this case is not whether defendants had knowledge of certain undisclosed facts but rather whether defendants knew or should have known that their failure to disclose those facts 'present[ed] a danger of misleading buyers or sellers.'"). The AC contains no "clear allegations of admissions, internal records, or witnessed discussions suggesting" Defendants "were aware that they were withholding vital information or at least were warned by others that this was so." *Luongo v. Desktop Metal, Inc*., 2023 WL 6142715, at *13 (D. Mass. Sept. 20, 2023) (Talwani, J.) (quoting *Brennan v. Zafgen, Inc.*, 853 F.3d 606, 613-14 (1st Cir. 2017)). The AC does not allege *anyone*—not FDA, not the "experts in hematological malignancies," not the FEs—told the Individual Defendants that the animal studies threatened FTX-6058's development. The AC therefore cannot support scienter.[3]

The Opposition has no response, which may be why it focuses on scienter where "a defendant minimized negative FDA feedback," (Opp. at 25)—but there is no such feedback here.[4] The chronology of events in the AC undercuts any scienter inference. *Leavitt v. Alnylam Pharmaceuticals, Inc.* is instructive. 525 F. Supp. 3d 259 (D. Mass. 2021). There, as here, the plaintiff pointed to a negative FDA decision (there, limited approval for fewer indications) and plaintiff argued defendants must have known they would not receive a broader label due to study

---

[3] *See also Shash v. Biogen, Inc.*, 84 F.4th 1, 15 (1st Cir. 2023) (no scienter where "there is no allegation that Defendants—or anyone else at Biogen for that matter—knew that the subgroup data undermined aducanumab's effectiveness when Defendants made their public statements").

[4] The Opposition's citation (at 25) to *In re Transkaryotic Therapies, Inc. Sec. Litig.*, 319 F. Supp. 2d 152 (D. Mass. 2004) is inapposite for that reason. The *Transkaryotic* defendants allegedly knew of "serious criticisms" from FDA. *Id.* at 159-61. There is no such factual allegation here.

-4-

data they possessed. *Id.* at 263-64. The Court rejected that argument, explaining that "missing is any allegation that the FDA, at any time prior to the release of its Final Report in September, 2018, expressed to defendants its disapproval of [the study] data." *Id.* at 265-66. So too here.

The AC's failure to plead contemporaneous negative knowledge is fatal. Even in the most favorable light, the AC only alleges that Fulcrum conducted some preclinical animal toxicology studies; those studies showed some malignancies; Fulcrum sent that data to FDA; FDA granted FTX-6058 Fast Track designation and let clinical trials continue while having that data. *See* Mem. at 12-13, 16-17. Plaintiff does not plead any facts suggesting that any Defendant was put on notice or had specific reason to believe that this data undermined statements about FTX-6058's potential. *See Metzler Asset Mgmt. GmbH v. Kingsley*, 928 F.3d 151, 166 (1st Cir. 2019) (no scienter where no facts that defendants had knowledge "sufficiently in conflict" with their statements).

Doubly fatal is that FDA took *positive* action *while possessing* the same information. *In re Biogen Idec*, 2007 WL 9602250, at *13 (specifically holding that "FDA approved 'fast-track' certification of the drug while in the possession of such data" undermined scienter); Mem. at 19-20. Here, FDA accepted FTX-6058's IND before the Class Period, granted it Orphan Drug designation, and then granted Fast Track designation, with no pleaded intervening negative comments.[5] Mem. at 11-17. That is the opposite of reckless disregard or conscious misbehavior.

Further, when the FDA placed FTX-6058 on clinical hold, the circumstances of that hold undercut a story of scienter. FDA expressly compared Fulcrum's data with preclinical and clinical data of *other*, unnamed drugs that affected the same protein target—data not alleged Defendants knew. AC ¶¶ 20-21, 141-44. "A statement cannot be intentionally misleading if the defendant did

---

[5] Fast Track designation means that in FDA's view FTX-6058 had potential to "show some advantage over available therapy." Mem. at 13, 20; *see also* 21 U.S.C. § 356(b) ("fast track" must "demonstrate[] the potential to address unmet medical needs").

not have sufficient information at the relevant time . . . ." *Biogen IDEC*, 537 F.3d at 45.[6] Further

unraveling any inference of scienter is that FDA has lifted the hold, AC ¶ 152, meaning Fulcrum's

"hopes [to continue its Phase 1b trial] . . . ultimately proved correct[.]" *Corban v. Sarepta*

*Therapeutics, Inc.*, 868 F.3d 31, 38-39 (1st Cir. 2017) (no scienter where new drug application

filing was delayed).

Attempting to overcome these defects, the Opposition reimagines the AC to conjure brand

new allegations. The Opposition now contends, without citation to any paragraph of the AC, that

Defendants knew or should have known about issues with FTX-6058 because the FDA told them

directly. *See, e.g.*, Opp. at 14 ("Defendants were well aware of the FDA's concerns").[7] None of

this conclusory speculation appears in the AC, and the Court should reject Plaintiff's attempts to

assert them here. An "allegation [that] is completely absent from the complaint . . . cannot be raised

for the first time in an opposition to a motion to dismiss." *Rowayton Venture Grp. LLC v.*

*McCarthy*, 2020 WL 4340985, at *5 (D. Mass. July 28, 2020).

**B.      The AC's Other Allegations Do Not Support a Strong Inference of Scienter.**

Failing to show scienter, the Opposition takes up a smorgasbord of unsuccessful

arguments: (1) alleged statements by FEs; (2) alleged "well known" information about the "class"

of drugs allegedly similar to FTX-6058; (3) Fulcrum's alleged hiring of hematological specialists;

(3) the Company's summer 2022 layoffs; (4) executive resignations; and (5) the core operations

doctrine. *See, e.g.*, AC ¶¶ 74-88; 161-65; Opp. at 9, 24-32. Alone or together, these allegations do

---

[6] FDA also has significant confidential access to drug study data of other companies not alleged to be known to Defendants here. *Biogen IDEC*, 537 F.3d at 47 ("The reports which companies make to the FDA about drug trials are not generally made public.").

[7] *See also* Opp. at 18 (speculating FDA "confirmed [the preclinical data] was negative."); *id.* at 25 (claiming Defendants had "actual knowledge of the agency's serious concerns"); *id.* at 31 (speculating Defendants "each made themselves aware of the Company's and FDA's actual (but undisclosed) findings with respect to FTX-6058 . . .").

not support an inference of scienter, let alone a strong inference.

The allegations from the two unnamed FEs do not support scienter. To start, FE2 left before the Class Period began, AC ¶ 79, making them irrelevant. *Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*, 778 F.3d 228, 245 (1st Cir. 2015) (rejecting CW allegations for the same reason). FE1 is likewise irrelevant. FE1 was a lower level employee—at least two rungs removed from any Individual Defendant—and left the Company in August 2022, before two reports of the supposedly concerning toxicology data were sent to FDA and six months before the clinical hold. AC ¶ 74. Plaintiff admits this individual "do[es] not . . . possess special knowledge of the Individual Defendants' mental states" (Opp. at 28) and is not alleged to have ever been in the same room as any Individual Defendant, much less know "information that was directly communicated to the individual defendants." FE1 cannot support an inference of scienter. *Metzler*, 928 F.3d at 161.[8]

The substance of FE1's statements get nowhere either. CW allegations must contain "specific descriptions of the precise means through which [the defendants' alleged fraud] occurred." *In re Biogen Inc. Sec. Litig.*, 857 F.3d 34, 43 (1st Cir. 2017). Here, they do not. FE1's claim for example that FTX-6058 "was on the toxic side" says nothing about the allegations of this case. AC ¶ 103. "[Adjectives and] adverbs are not facts." *Quinones v. Frequency Therapeutics, Inc.*, 665 F. Supp. 3d 156, 178-79 (D. Mass. 2023) (dismissing CW allegations). Does "toxic side" refer to hematological malignancies or something else entirely? What was the basis for their

---

[8] Plaintiff's attempts to distinguish *Metzler* fail. Opp. at 28 n.4. *Metzler* found that "imprecise" statements from CWs do not meet the PSLRA's demanding standard, particularly when there is no interaction between the CW's alleged knowledge and the defendants. 928 F.3d at 161. The AC's allegation that FE1 thought FTX-6058 was "on the toxic side," can only be relevant to *Defendants' knowledge* if the AC alleges FE1 conveyed it. The AC doesn't. Courts reject these allegations. *In re iRobot Corp. Sec. Litig.*, 527 F. Supp. 3d 124, 142-43 (D. Mass. 2021) (CWs' lack of contact with senior management "undercut[] the [p]laintiffs' reliance upon them"); *In re Biogen Inc. Sec. Litig.*, 857 F. 3d at 43 (similar); *Okla. Firefighters Pension & Ret. Sys. v. Biogen Inc.*, 665 F. Supp. 3d 125, 151 (D. Mass. 2023) (similar).

knowledge? Did they even work on FTX-6058 (as compared to losmapimod or another drug candidate)? The AC does not say. This nonspecific, unsupported opinion statement does not create a strong inference that Defendants were reckless with the truth.[9]

Plaintiff's assertions (Opp. at 12-13, 19) that Defendants must have known their statements were false or misleading or "the hematological safety problems of [FTX-6058's] drug class [including FDA-approved Tazverik] was a matter of public record," are insufficient under the PSLRA. *See, e.g.*, *Alnylam*, 525 F. Supp. 3d at 266 (rejecting argument that "[j]ust because the Individual Defendants are highly educated pharmaceutical executives familiar with clinical trial design and FDA practice does not mean, *ipso facto*, they 'must have known' that the design of [the trial] rendered dual indication approval [] radically implausible"); *Gunther v. EnerNOC, Inc.*, 2009 WL 10693532, at *8 (D. Mass. May 13, 2009) (rejecting scienter allegations that contrary information was "generally known"). The AC contains no allegation that anyone suggested to the any Defendant that this supposedly "public record" information undermined their statements. *Loc. No. 8 IBEW Ret. Plan & Tr. v. Vertex Pharms., Inc.*, 838 F.3d 76, 82 (1st Cir. 2016) ("Missing from the allegations is any contention that any defendant viewed [one result] as incompatible with [another result], or that any of the unnamed individuals conveyed any such skepticism to any defendant."). In a similar context, the First Circuit explained that "reliance on news and scientific articles . . . do not add much support for the complaint's allegation that the defendants knew, or were reckless in not knowing, that they risked misleading investors unless they disclosed the

---

[9] The FE allegations are nothing like the Opposition's cases (at 28-29). *Washtenaw County Employees Retirement System v. Avid Techology, Inc.* had a CW who "attended weekly meetings with" the key defendant. 28 F. Supp. 3d 93, 111 (D. Mass. 2014). *Hill v. State Street Corp.* used several inside CWs supported by an 18-month attorney general investigation. 2011 WL 3420439, at *11-13 (D. Mass. Aug. 3, 2011). FE1s' vague "toxic side," "the Company situation was going down," and other allegations, AC ¶¶ 103, 116-17, are precisely the kinds of "water cooler hearsay" the cases reject. *Hill*, 2011 WL 3420439 at *13.

[alleged adverse data]." *Zafgen*, 853 F.3d at 614-15. In *Zafgen*, as here, because the plaintiffs had cited to little more than different studies conducted using different drugs at different dosages, there was no strong inference of scienter. *Id*.

Plaintiff's allegations (Opp. at 19-20, 25, 27) about the Company's hiring of hematological experts do not contribute to a strong inference of scienter either. To start, the AC does not allege *why* they were hired. *See* AC ¶¶ 16, 116.[10] The Memorandum's discussion (at 22) about possible reasons to hire these experts simply illustrates that the AC does not allege particularized facts connecting hiring experts to knowledge of fraud.[11] Further, the AC never alleges that these experts *themselves* believed anything was amiss or told Defendants so. The Opposition's reliance (at 20) on *Matrixx Initiatives, Inc. v. Siracusano* is not well-founded. 563 U.S. 27 (2011). The plaintiff in *Matrixx* pleaded that "Matrixx received reports from medical experts and researchers that plausibly indicated a reliable causal link." *Id.* at 27, 46-47. There is no comparable allegation here.[12]

The allegation that the Company laid off workers (Opp. at 14, 25) does not support scienter. The AC never describes which workers were laid off or what caused the layoffs. AC ¶¶ 16, 162. Plaintiff's "own speculation and conjecture about . . . business decisions cannot substitute for well-pleaded facts." *Ganem v. InVivo Therapeutics Holdings Corp.*, 845 F.3d 447, 456 (1st Cir. 2017) (affirming dismissal). And while the Opposition contends (at 9) that the layoffs were not disclosed to investors, Fulcrum *disclosed* the reduction in force in its August 2022 earnings press release

---

[10] Any claims to the contrary are unsupported by the AC. *Compare* Opp. at 25 ("[B]ack-and-forth with the FDA resulted in Fulcrum hiring malignancy experts…"), *with* AC ¶ 16 ("Fulcrum hired several experts in hematological malignancies . . ."); AC ¶ 116 (no reason for hiring given).

[11] *See Urman v. Novelos Therapeutics, Inc.*, 796 F. Supp. 2d 277, 283 (D. Mass. 2011) ("general allusions to unspecified internal corporate information" not sufficient to show scienter).

[12] Even if these experts had provided opinions that there was risk to the FTX-6058 program (not alleged), that would not be sufficient for scienter. *See Hill v. Gozani*, 638 F.3d 40, 59 (1st Cir. 2011) (no scienter where "undisclosed opinion" did not "approach [a] widely-accepted certainty of failure or [a] comprehensive cover-up").

and earnings call, both of which are cited in the AC. **Ex. 10** (Aug. 11, 2022 Press Release), Doc. No. 36-10 at 2 (AC ¶ 118); **Ex. 11** (Q2 2022 Earnings Call Tr.), Doc. No. 36-11 at 8 (AC ¶¶ 121-22). These allegations do not suggest scienter as to statements regarding FTX-6058.

Nor does the Opposition respond to precedent in this Circuit that the timing of executive resignations, without more, does not give raise to an inference of scienter. *See* Opp at 30-31; *Luongo*, 2023 WL 6142715, at *14. The AC does not allege any of these officers resigned due to a dispute with the Company or with any other indication of impropriety. *See iRobot*, 527 F. Supp. 3d at 140-41 (departure of CEO and COO not suggestive of scienter).[13]

The Opposition falls back on a theory of "core operations," but that argument carries no weight in this Circuit where it "stands naked, unadorned by any other piece of evidence purporting to establish the essential 'plus' factor—guilty knowledge[.]" *In re Psychemedics Corp. Sec. Litig.*, 2017 WL 5159212, at *6 (D. Mass. Nov. 7, 2017). The AC alleges no such "plus factor" here.[14]

### C.     Plaintiff Fails to Allege Defendants Had a Motive to Commit Fraud.

The AC's only motive allegations are (1) an ordinary course stock offering completed during the Class Period, AC ¶ 163; and (2) a single conclusory stock trading allegation: "on January 13, 2023, Defendant Gould sold 6,766 Fulcrum shares . . . netting over $92,000 in proceeds." AC ¶ 36. As explained in the Memorandum (at 24-26), this Circuit's precedent squarely forecloses each as suggesting scienter. As to the stock offering, the allegations fail to support scienter because the AC does not plead Fulcrum would "shutter its doors unless it padded earnings

---

[13] Even cases cited in the Opposition (at 24) agree that executive resignation allegations cannot carry the day. *See Collier v. ModusLink Glob. Sols., Inc.*, 9 F. Supp. 3d 61, 76 (D. Mass. 2014) ("[F]actors such as resignations of high-ranking company officers or government investigations are, in isolation, insufficient to support a strong inference of scienter.").

[14] The Opposition (at 29) cites *Crowell v. Ionics, Inc.*, 343 F. Supp. 2d 1 (D. Mass. 2004). But in *Crowell*, that "plus" factor was "an email pointing to the company's vice president as the author of the scheme." *See In re A123 Sys., Inc. Sec. Litig.*, 930 F. Supp. 2d 278, 285 (D. Mass. 2013) (distinguishing *Crowell* and granting motion to dismiss).

by deceiving investors." *Corban*, 868 F.3d at 42. (Nor could it; Fulcrum had ample funds. Mem. at 25, n.13.) For the one stock trade, Plaintiff does not meet his burden to allege that the trade was "unusual" or "well beyond the normal patterns of trading by those defendants." *Abiomed*, 778 F.3d at 246 (quoting *Waters*, 632 F.3d at 761). (Again, nor could it, Gould sold less than 1% of his holdings. Mem. at 26, n.15. *Zafgen*, 853 F.3d at 615-16 (no scienter where CEO "retained at least 93% of his [] holdings").)[15] These are not fact disputes; Plaintiff must plead these facts and failed to do so. *Lenartz v. Am. Superconductor Corp.*, 879 F. Supp. 2d 167, 186 (D. Mass. 2012) (plaintiff "bears the burden"). The Opposition flatly ignores this case law, not even citing *Corban*, *Abiomed*, or *Zafgen*. (*See* Opp. at 32-33.) Plaintiff has not met the pleading standard.

### D. The Non-Fraudulent Inferences the Court Must Weigh Are Far More Cogent and Compelling than Plaintiff's Allegedly Fraudulent Ones.

As the discussion above and in the Memorandum indicates, the overwhelming picture is inconsistent with fraud. The AC alleges Defendants received positive decision after positive decision from FDA about FTX-6058 during the Class Period, and does *not* allege facts that FDA (or anyone else) provided negative feedback at that time. Then, when negative information came in the form of the clinical hold, the Company "promptly disclosed" it, which "run[s] counter to any inference of scienter." *In re Genzyme Corp. Sec. Litig.*, 754 F.3d 31, 42, 44 (1st Cir. 2014).

The claim the AC tries to make out, that the act alone of not disclosing data must be fraudulent, has been rejected in this Circuit many times over. Defendants are not obligated to disclose all details of "run-of-the mill regulatory back-and-forths" with FDA especially where Defendants issue adequate disclosures of risks, even if in "broad[] terms." *Yan*, 973 F.3d at 40. Far from "boilerplate" (Opp. at 34), the Company issued extensive warnings to the market, including *specifically* that "preclinical testing may produce results based on which . . . regulators may . . .

---

[15] To correct the Memorandum: Gould sold 6,766 shares for "$92,000," not $6,766. AC ¶ 36.

halt ongoing clinical trials." **Ex. 3** (2021 Form 10-K), Doc. No. 36-3 at 33; *see also* Mem. at 13-14; **Ex. 2** (Chart of Disclosures), Doc. No. 36-2. That the risk Defendants warned investors about came to pass is indicative of their honesty, not deceit.

The balancing of inferences, then, is entirely one-sided. Defendants expressed optimism when they had cause for optimism, and immediately reported negative news from FDA when they had it. This is not a close case. With no basis to suggest Defendants had anything other than honest intensions, Plaintiff has not pleaded a strong inference of scienter.

## II. PLAINTIFF HAS NOT ALLEGED ANY MATERIALLY MISLEADING STATEMENTS OR OMISSIONS.

The statements cited in the AC as being potentially false or misleading fall into two categories: (1) factual statements about particular trials that are not alleged to be false (*e.g.*, "[i]n the Phase 1b trial, FTX-6058 . . . [was] [g]enerally well tolerated," AC ¶ 132) and (2) generally positive opinion statements, many of them forward-looking (*e.g.*, "FTX-6058 . . . could potentially be the first oral HbF inducer to address critical unmet needs in this population," AC ¶ 113). The Opposition fails to address Defendants' statements specifically, instead asserting in conclusory fashion that each statement is misleading for a host of non-specific reasons not alleged to have been "revealed" when Fulcrum announced the clinical hold. *See* Opp. at 1, 18-19.[16] **Ex. 1**, Doc. No. 36-1, lists each statement and the reasons why they are not misleading.

For the factual statements, Plaintiff has no answer to the fact that *none of them are about the preclinical animal toxicology studies*. Plaintiff does not plead (and the alleged "corrective disclosure" of the clinical hold does not reveal) that any of these statements about these specific

---

[16] The Opposition also makes up new statements, none of which are in the AC or the documents incorporated therein. For example, Defendants did not claim FTX-6058 "had a favorable safety profile," (Opp. at 9); "was on track to obtain approval," (*id.*); had "a lower risk profile . . . , claiming it did not cause the malignancies that plagued Tazerik [sic]," (*id.* at 13); or "had a distinct 'lack' of safety issues," (*id.* at 18). With no basis in the pleadings, these should be rejected.

trials are inaccurate. *See* Mem. at 30-31. And Defendants told the market that they were performing

the preclinical animal toxicology studies *and* that they had not released data concerning them.

Mem. at 28 & n.17. Plaintiff cannot mix-and-match careful statements about specific trials in a

regulated industry to create a misstatement that is not there. *See In re Philip Morris Int'l Inc. Sec.*

*Litig.*, 2021 WL 4135059, at *11 (S.D.N.Y. Sept. 10, 2021) ("Plaintiffs have failed to plausibly

allege that Defendants' factually accurate statements about their clinical trials were rendered

misleading by virtue of the failure to disclose results from a different category of studies.").

For the rest of Defendants' statements, the Opposition, again, ignores the robust body of

precedent concerning opinions and predictions about drug development. *See Harrington v.*

*Tetraphase Pharms. Inc.*, 2017 WL 1946305, at *5 (D. Mass. May 9, 2017) ("An opinion is only

actionable in this context if it is 'without any reasonable basis' or 'objectively false.'").[17] Instead,

the Opposition reaches for inapposite and out-of-Circuit cases that do not speak to the specific

defects in the AC's allegations. *See* Opp. at 21-22.[18] Defendants' statements had a reasonable

basis; they projected general optimism for FTX-6058 at a time when FDA was allowing clinical

trials to progress and granted positive regulatory status.

Plaintiff's theory of omission also fails. The securities laws do not create an affirmative

duty to "divulge the details of interim 'regulatory back-and-forth,'" *Yan*, 973 F. 3d at 40, or

---

[17] *See also Corban*, 868 F.3d 31 at 38 (statements that defendants were "encouraged by [FDA] feedback" and that "[study] data . . . . will be sufficient for an NDA filing" were "opinion" and "poor material for building a fraud claim"); *Luongo*, 2023 WL 6142715, at *12 ("the statements about Flexcera's superior characteristics are best characterized as 'immaterial expressions of corporate optimism or puffery,' which cannot serve as the basis for securities fraud").

[18] The Opp. (at 22) cites *In re Smith & Wesson Sec. Litig.*, 604 F. Supp. 2d 332, 342 (D. Mass. 2009) for the proposition that "only purely forward-looking statements are entitled to protection as 'mere puffery.'" There, the Court was making the point that claims like "we have increasing demand" can be true or false and thus not puffery. Nothing about that case suggests statements like "FTX-6058 is a *potential* best-in-class," AC ¶ 132 (emphasis added), are actionable.

disclose "all potentially interesting information." *Thant v. Karyopharm Therapeutics Inc.*, 43 F.4th 214, 226 (1st Cir. 2022). This is especially true given that Fulcrum focused its disclosures on FTX-6058's performance in *humans*, and accordingly told investors that it was not disclosing the results of the animal toxicology studies. *See* Mem. at 28 n.17. The AC and Opposition do not explain how statements about animal toxicology data materially alter Defendants' statements about the specific clinical trials they did discuss or their optimism concerning FTX-6058, particularly in light of the indications otherwise, including FDA's positive actions. *See Whitehead v. Inotek Pharms. Corp.*, 2018 WL 4732774, at *6 (D. Mass. June 27, 2018) (dismissing omission claims that "were simply not the subject of the statement."); *see also In re Wayfair, Inc. Sec. Litig.*, 471 F. Supp. 3d 332, 343 (D. Mass. 2020) ("Merely stating that Defendants omitted this information is not particularized pleading sufficient to meet [PSLRA] standards").

Finally, setting aside the viability of Item 303 claims, which Defendants preserve (*see* Mem. at 35), Plaintiff's Item 303 argument fails because Defendants "adequately disclosed the claimed risk or uncertainty." *Yan*, 973 F.3d at 33-34. The Company specifically warned investors that that "preclinical testing may produce results based on which . . . regulators may require us[] to . . . halt ongoing clinical trials." Doc. No. 36-3 at 33. That is more than enough.

## III.    THE AC FAILS TO PLEAD LOSS CAUSATION.

The AC failed to plead loss causation because the alleged "corrective disclosure" revealed only that (i) FDA placed FTX-6058 on a clinical hold (a new event) and (ii) that FDA concluded that that "the profile of hematological malignancies observed in the non-clinical studies of FTX-6058" was "similar" to that "observed with *other* inhibitors of PRC2," a fact that Defendants were not alleged to have known until this new event. AC ¶¶ 141, 144 (emphasis added). The Opposition's attempted reframing (at 35-36) says much the same thing: that FDA had concluded there was some relation in hematological malignancy risk to other drugs (in the Opposition,

"marred by the same malignancy issue") and that FDA put the trial on hold pending further evaluation (in the Opposition, "FDA requested that Fulcrum further define the population"). In either framing, they are new events, not known to Defendants prior to FDA's message, and thus, not a corrective disclosure that creates loss causation. *See Leung v. bluebird bio, Inc.*, 599 F. Supp. 3d 49, 69 (D. Mass. 2022) (failure to plead loss causation where "the Company's announcement . . . did not correct some untruth about the previously projected timeline but rather updated the Company's projection based upon new information").

## IV.    THE COURT MAY CONSIDER THE DOCUMENTS ATTACHED TO DEFENDANTS' MOTION AT THE PLEADING STAGE.

The Opposition claims that Exhibits 20 to 24 to Defendants' Memorandum were filed "for the express purpose of rebutting Plaintiff's well-pled factual allegations." Opp. at 15-16. They were not, and Plaintiff has no reason to run from these public documents. Each exhibit was "incorporated by reference" in the AC, a "matter[] of public record," or otherwise "susceptible to judicial notice." *Lydon v. Local 103, Int'l Bhd. of Elec. Workers*, 770 F.3d 48, 53 (1st Cir. 2014). Mem. at 1, n.3. **Ex. 20**, Doc. No. 36-20, is an FDA-issued drug label on a government website. **Ex. 21**, Doc. No. 36-21, is a Form 10-K, cited only for the date Fulcrum first made a disclosure, *see* Mem. at 31. **Ex. 22**, Doc. No. 36-22, and **Ex. 23**, Doc. No. 36-23, are the SEC filings from which the AC alleges the same stock sale in AC ¶ 36. And **Ex. 24**, Doc. No. 36-24, is a presentation incorporated by reference in AC ¶ 100.

### CONCLUSION

For the reasons above and in the Memorandum, the AC should be dismissed with prejudice. The Opposition's final line requests leave to amend, (Opp. at 37), but this is a "hopeless quest," without motion, argument, or proposed amendment. *Abiomed*, 778 F.3d at 247. It holds "no legal significance" and the Court should reject it. *CVS Health Corp.*, 46 F.4th at 36.

Dated:  February 12, 2024

Respectfully submitted,

FULCRUM THERAPEUTICS, INC., BRYAN STUART, ROBERT J. GOULD, CHRISTOPHER MORABITO, and JUDITH DUNN

By their attorneys,

*/s/ Deborah S. Birnbach*
Deborah S. Birnbach
Tucker DeVoe
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.: 617.570.1000
Fax: 617.523.1231
DBirnbach@goodwinlaw.com
TDevoe@goodwinlaw.com

-16-

-17-

## <u>CERTIFICATE OF SERVICE</u>

I, Deborah S. Birnbach, hereby certify that a copy of the foregoing Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss the Amended Complaint, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on February 12, 2024.

Dated:  February 12, 2024                                  */s/ Deborah S. Birnbach*
                                                                        Deborah S. Birnbach